JOHN STUCKES et al., Appellants, v. NATIONAL CANDY COMPANY, Respondent.

St. Louis Court of Appeals. Argued and Submitted March 6, 1911. Opinion Filed June 6, 1911.

1. CONTRACTS: Royalties for Secret Process: Partial Disclosure: Right of Recovery. Where, under a contract by which the discoverer of a new process for making jacketed stick candy agreed to inform a manufacturer of the use of his process, in consideration of royalties to be paid, the discoverer made a demonstration of his process but did not make a full disclosure of the ingredients used because told not to do so by the manu-

Stuckes v. National Candy Co.

facturer's agent, and the manufacturer thereafter used the demonstration as the basis for experiments that were the means of demonstrating the practicability of manufacturing jacketed stick candy, the manufacturer could not deprive the discoverer of the benefit of his disclosures, even though some change was made in the manufacture or the composition of the ingredients used.

2. ——: ——: ——: ——: Sufficiency of Evidence. In an action for royalties under a contract providing that the discoverer of a new process for making jacketed stick candy should inform a manufacturer concerning his process, in consideration of royalties to be paid, *held*, there was evidence tending to show that, under color of the contract, defendant had acquired sufficient information from a demonstration of plaintiff's process to put it onto a line of experiment by which to reach the same result achieved by that process, and hence the question of defendant's liability was for the jury.

3. ——: ——: ——: ——: ——. In such a case, evidence that parties in the employ of plaintiff, who were familiar with plaintiff's mode of manufacture, had gone into defendant's employ was sufficient to warant an inference that from knowledge derived from the demonstration and from such employees defendant had been enabled to secure the attained result.

4. EVIDENCE: Requiring Disclosure of Facts: Power of Court. Even in an action at law, a party to the action is not protected in the perpetration of a wrong nor suffered to reap the benefit of it by a claim that to disclose the truth would subject him to loss.

5. CONTRACTS: Royalties for Secret Process: Right of Recovery: Evidence: Failure to Disclose Facts. In an action for royalties under a contract providing for the payment of royalties for the use of a process for the manufacture of stick candy, discovered by plaintiff, the defense being a denial that defendant used plaintiff's process, where plaintiff at the trial asked for, but defendant refused to give, the formula used by the latter, and plaintiff thereupon introduced in evidence a specimen of the ingredients used in his process and in defendant's, it was for the jury to determine whether the ingredients were practically identical; the fact that the jurors were not expert chemists and might, therefore, be led astray by an inspection of the specimens being a risk taken by defendant when it refused to disclose the composition of the material used by it in its process.

6. ——: ——: Partial Disclosure: Right of Recovery. Where, under a contract by which the discoverer of a new

process for making jacketed stick candy agreed to inform a manufacturer of the use of his process, in consideration of royalties to be paid, the discoverer made a demonstration of his process but did not make a full disclosure of the ingredients used because told not to do so by the manufacturer's agent, and the manufacturer thereafter used the demonstration as the basis for experiments that were the means of demonstrating the practicability of manufacturing jacketed stick candy, the fact that the discoverer did not fully communicate to the manufacturer, or communicate at all, the composition of the ingredients used was no defense in an action for royalties for the use of the process, since defendant prevented a full disclosure.

7. ———: ———: **Right of Recovery: Damages: Evidence.** In an action for royalties for the use of a secret process for manufacturing candy, under a contract providing for the payment of a percentage of the saving effected by the use of the process, it was error to exclude a showing as to the amount of candy manufactured by defendant when the contract was made, as that was some evidence of the extent of defendant's business.

8. **EVIDENCE: Suppression of Evidence: Presumption: Damages.** In an action for royalties for the use of a secret process for manufacturing candy, defendant's failure to keep accounts separating the product of such process from the product of other processes was ground for presuming all that was claimed by plaintiff as damages, on the theory of suppression of evidence, and it was for the jury to determine what damages should be awarded.

Appeal from St. Louis City Circuit Court.—*Hon. Matt G. Reynolds,* Judge.

REVERSED AND REMANDED.

*E. T. & C. B. Allen* for appellants.

(1) Where one honestly comes into the possession of a trade secret and does not violate any contract or confidential relation, he may use same as he sees fit. Stewart v. Hook. 118 Ga. 445; Chadwick v. Covell, 151 Mass. 190; Watkins v. Landon, 52 Minn. 389. (2) But one who in the acquisition of the secret has been guilty of a breach of confidence or of contract with the plaintiff, or has acted in fraud of plaintiff's rights, is liable to plaintiff. Tabor v. Hoffman, 118 N. Y. 30;

Hamlyn v. Houston, 1 K. B. 81; Morrison v. Moat, 20 L. J. Ch., N. S. 513; Peabody v. Norfolk, 98 Mass. 452; Salomon v. Hertz, 40 N. J. Eq. 400; Hardware Co. v. Waibel, 1 S. D. 492; Tipping v. Clarke, 2 Hare 389; Commerce v. Wells, 100 Minn. 205. (3) Although the defendant might have learned plaintiffs' method independently by their own experiment and efforts, yet it is conceded by the answer and established by the evidence that plaintiffs, in pursuance of a contract, did exhibit their process and method to the defendant. How then is it possible thereafter to decide how much of defendant's process would be attributable to the independent efforts of its chemists, and how much to the knowledge of the plaintiffs' process, acquired by it from plaintiffs' demonstration? Defendant, by the contract, and demonstration, lost the right to make use of the results of future independent experiments. Stone v. Goss, 63 L. R. A. 344. (4) Defendant was liable for the stipulated royalty though it used but a part of plaintiffs' process. It was demonstrated that defendant used a glucose center mixed with a fat, enveloped in a wrapper or jacket of drier candy. The combination of these two was revealed to defendant by plaintiffs, and used by defendant. Hubbard v. Allen, 123 Pa. St. 198; Kroegher v. McConway, 149 Pa. St. 444. (5) The only possible difference between the two methods was in the "fat" which was used. (a) The "fat" used by each party was introduced in evidence. The court declined but the jury accepted the invitation to compare them. How does the court know that the jury did not find them exactly the same? The only test by which they could be compared was the appearance, touch, taste and smell. The jury's finding on that point would be conclusive on the court. Simmons Medicine Co. v. Simmons, 81 Fed. 167. (b) If the "fats" were substantially alike that was sufficient. Kroegher v. McConway, 149 Pa. St. 444. (6) If the disclosure of the ingredients of the fat was es-

sential to the use of the process, defendant's declination to permit plaintiffs to make the disclosure is equivalent to performance on plaintiffs' part. Halpin v. Manny, 57 Mo. App. 59; Claudius v. Amusement Co., 109 Mo. App. 346.

*Frank F. Reed* and *Sears Lehman* for respondent.

(1) A trade secret is property only as long as it is kept a trade secret, and any one who can discover it by investigation or analysis is free to use it. Of course it cannot be obtained by surreptitious methods such as the bribery of employees, or the breach of an actual subsisting contract, but scientific investigation and analysis may always be employed for the purpose of discovering the situation. Chadwick v. Covell, 151 Mass. 190; Tabor v. Hoffman, 118 N. Y. 30; Simmons v. Simmons, 81 Fed. Rep. 163; Thum v. Tloczynski, 114 Mich. 149; National Tube Co. v. Eastern Tube Co., 23 Oh. Cir. Ct. 468; Westerveldt v. Paper Co., 154 Ind. 673; Fralich v. Despar, 165 Pa. St. 24; Sanitas Nut Co. v. Cemer, 134 Mich. 370; Vulcan Detinning Co. v. Am. Can Co., 67 N. J. Eq. 243; Wheaton v. Paters, 8 Pet. 591; Jewellers Agency v. Jewellers Pub. Co., 155 N. Y. 241; N. J. Dental Soc. v. Dentacura Co., 57 N. J. Eq. 593; Haskins v. Ryan, 71 N. J. Eq. 575; Bristol v. Society, 132 N. Y. 364. (2) Courts have always been keen to curb the curiosity of competitors who are working along the same lines of investigation and the decisions are frequent that a suitor cannot be compelled to disclose the secrets of his trade and buisness. Disclosure is never compelled except in clear cases of fraud. Crocker-Wheeler Co. v. Bullock, 134 Fed. 241; Wigmore on Ev., secs. 2212, 2374; Moore v. Craven, L. R. Ch. App. 94; Carver v. Pinto Leite, L. R., 7 Ch. App. (1871), 90, 96, 25 L. T. 822; G. W. Colliery Co. v. Tucker, 30 L. T. 731, L. R. 9 Ch. App. 376; Badische A. & S. Fabrik v. Levinstein, 24

Ch. D., 156, 176, 48 L. T., 82, 12 App. C. 710; Ashwarth v. Roberts, L. R. Ch. D. 623; Star Kidney Co. v. Greenwood, 3 Ont. 280; Tetlow v. Savournin, 15 Phila. 170; Robinson v. Railroad, 28 Fed. 340; Moxie Nerve Food Co. v. Beach, 35 Fed. 465; Dobson v. Graham, 49 Fed. 17; Keller v. Goodrich, 117 Ind. 556.

REYNOLDS, P. J.—Action by plaintiffs, appellants here, against defendant, to recover $1800 for royalties claimed to be owing plaintiffs under a contract entered into between the parties on April 19, 1904, the action begun April 23, 1906. The petition alleges that one of the plaintiffs, John Stuckes, had invented a new and useful improvement in the process of making a class of candy known as hard boiled goods, usually made in the form of sticks, whereby the cost of production was lessened and the prevention of the candy from becoming sticky effected, it being averred that the process which Stuckes had discovered was a secret one and that the other plaintiffs were parties to the contract, interested with Stuckes in the profits to be made out of the use of the process. Defendant is a corporation engaged in the manufacture of candy, having plants at different points in the United States, among other places, at St. Louis, Missouri, and Louisville, Kentucky. It is averred that on April 19, 1904, defendant, desiring to use this process of plaintiffs in the manufacture of candy, entered into a written contract with plaintiffs, whereby defendant agreed that if plaintiffs would fully inform defendant of the use of this formula, process or method, defendant would pay them, by way of royalty, one-fourth of the saving effected by its use as against the cost of candy made in the old method, on all candy manufactured by defendant in which the process was used, royalty payable on the 15th of each month following. Defendant also agreed to keep the formula, process and method a secret. It is averred that plaintiffs thereafter fully informed de-

fendant of the secret process, and that defendant has, since the disclosure of it, used the process in several of its manufacturing plants in this state and elsewhere and has thereby made a great saving in the cost of manufacturing, but has not paid the royalty as agreed upon for the use. Wherefore it is averred that defendant became indebted to plaintiffs for royalties accruing from and including the month of April, 1904, to the 26th of September, 1905, in the sum of $1800, for which, and costs, judgment is demanded.

The amended answer on which the case was tried, after a general denial, avers that on or about April 19, 1904, and for some time before then, defendant was more or less extensively engaged in the manufacture of hard boiled candy, the principal ingredients of which are cane sugar, commonly known as sugar, and corn sugar, commonly known as glucose; that on or about the date mentioned plaintiffs represented to defendant that they possessed and had originated a new and secret process whereby in making hard boiled candy the percentage of glucose could be very greatly increased without impairing its commercial character. Whereupon, it is averred, an agreement was entered into, that agreement being the one counted on by plaintiff, but set out somewhat more fully than as pleaded by plaintiff, the answer averring that in and by that it was agreed that defendant should have the exclusive right to use the formula, etc., within the limits of North America, except that the St. Louis Candy Manufacturing Company of St. Louis might use it, providing no less royalty than that to be paid by defendant should be paid by the St. Louis Candy Manufacturing Company; that it was further agreed that all parties to it would use their best endeavors at all times to keep the formula, etc., secret, unless mutually agreed by defendant and plaintiffs that it should be patented, and further that John Stuckes or whomsoever he should designate in writing should represent all the

plaintiffs and his act or the act of whomsoever he might designate in writing should bind all the plaintiffs, the agreement to continue for the term of seventeen years from its date or for the life of the patent rights, if the formula, etc., were patented, defendant to have the benefit of any changes that were made by the use of any other method which, during the term of the agreement, if adopted, would lessen the cost by corresponding reduction in the royalty. It is further averred in this amended answer that within the 30 days defendant offered plaintiffs ample opportunity for the disclosure and demonstration of the process, but that plaintiffs did not demonstrate and disclose satisfactorily to defendant that by the use of any process owned and originated by them the percentage of glucose in hard boiled candy could be increased without destroying the commercial character thereof, but did attempt a demonstration of their alleged process, which demonstration was a complete failure, in that defendant did not learn therefrom what the process was; that the candy resulting therefrom became sticky in time, as was usual for such candy when made with a high percentage of glucose; that plaintiffs were thereafter duly notified that defendant would have nothing more to do with them or their alleged original process and plaintiffs accepted the notice. It is further averred in this answer that never, either at the attempted demonstration, or at any other time, was there any new or secret process for the manufacture of hard boiled candy disclosed to defendant or any of its officers or agents by plaintiffs or any one in their behalf, and neither defendant nor any of its officers or servants at any time learned or discovered any new secret process from plaintiffs or any of them, either under the terms of the agreement or otherwise. It was further averred that on September 26, 1905, letters patent were issued to plaintiff Stuckes on the process for manufacturing hard boiled candy and that

it was from the specifications accompanying the application for these patents that defendant for the first time learned the process plaintiffs claimed to own and to have originated, and that the process described in the specifications consists in making the hard boiled candy in two parts, a core and a jacket, the core consisting of a high percentage of glucose mixed with common fats, grease and stearine, the jacket being made in the same manner but being made without a mixture of fat and with a very high percentage of sugar. It is averred in the answer that the process, etc. of making hard boiled candy disclosed in these specifications was neither new nor original and was not originated or exclusively possessed by plaintiffs; that it was old and well known to the candy trade long prior to any negotiations between plaintiffs and defendant and that long prior to these negotiations and the execution of the agreement, defendant had experimented and used both the jacket method and the addition of fats, etc., in the manufacture of hard boiled candy, and that defendant's president so told plaintiff Hoke prior to the execution of the agreement. It is further averred in this answer that the process, etc., is not now, nor was at any time mentioned in the petition, the process used or employed by defendant, or that which defendant is now using in part in the manufacture of hard boiled candy, but that defendant has been, since October 1, 1905, using a process and formula discovered by its chemist through investigation and research, which process is extremely valuable to defendant and enables the use of a larger percentage of glucose and keeps the candy from becoming sticky and makes it a commercial article; that this process is a trade secret of great value and its disclosure would work great and irreparable injury to defendant, especially so if the disclosure were made to plaintiffs, who are largely interested in the candy business in competition with defendant.

A reply generally denying all this matter set up in the amended answer was filed and the case went to trial before the court and a jury.

At the close of the testimony introduced by plaintiffs the court gave an instruction that on the pleadings and evidence in the case plaintiffs could not recover, whereupon they took a nonsuit, with leave to move to set it aside. This motion was filed in due time and overruled, and the case is here on the appeal of plaintiffs.

The evidence in the case tended to show that under the contract pleaded, Mr. Stuckes, one of the plaintiffs, who was the inventor or discoverer of the process referred to, and one of the parties connected with the St. Louis Candy Manufacturing Company, excepted from the agreement, went to Louisville, Kentucky, and in the presence of two of the officers of defendant and of the superintendent of defendant's plant at that place, showed his manner of boiling candy, the boiling being carried on in two kettles or vats, in one of which there was a larger percentage of glucose than of sugar. Mr. Stuckes cast four packages of a preparation which he had with him, and which is referred to as grease or "dope," into one of these vats. The representatives of defendant watched this and after the melted material was taken out and rolled or spun into sticks, Mr. Stuckes asked these representatives if they wanted to know what he used and if they did, he would tell them. Whereupon one of them spoke up and said: "Mr. Stuckes, I prefer you do not tell." Accordingly he did not tell them what it was he had cast into the vat and what he used in combination with the sugar and glucose to produce the desired result; that is, a candy with a comparatively soft center or filler, wrapped with a jacket of harder consistency. There was evidence tending to show that while the combination of a jacket and filler was old and had been in use, as used it was unsatisfactory to the trade, in

that it did not make a merchantable candy that would stand exposure to the weather or changes of weather. The old trouble seems to have been that when the candy hardened the filler drained out, leaving the jacket "a blow pipe," as some of the witnesses said, and it was this difficulty that Mr. Stuckes' process sought to overcome and which he or his associates discussed with defendant's officers when they first brought the matter to the attention of defendant. It appears that these officers claimed that they had heard of and tried a great many experiments in the treatment of candy, among them that of jacketing candy, but none had proved successful. Under the explanations which Mr. Stuckes and one of his associates made, as far as they did make it, of the new process, the president of defendant company thought it was somewhat different from any he had before tried or heard of, and hence he was satisfied to make this contract. There was evidence in the case tending to show that after this experiment at Louisville, defendant, while disclaiming knowledge of plaintiffs' process and refusing to go on under the contract, did enter upon the manufacture of jacketed candy, which before that time it had either not done at all, or had not done successfully.

A return made by defendant to an order for the production of the books and records of defendant company to show the extent to which it had manufactured candy of the ordinary stick variety and of this jacketed or filled candy and of the saving made by the use of the process in making the filled or jacketed candy over that involved in making candy under the old method of manufacture, set out that no accounts had been kept showing any division between the two kinds.

Plaintiffs introduced in evidence specimens of the so-called "dope," which they used in their process and it was submitted to the jury. They also produced and

introduced in evidence specimens of the "dope" used by defendant in the making of jacketed candy, and that was submitted to the inspection of the jury, evidence being introduced tending to identify them as the kinds of "dope" used by the two parties in the manufacture of this jacketed candy.

Plaintiffs at the trial asked for the formula or statement of the composition of the "dope" used by defendant. Counsel for defendant refused this information on the ground that to reveal it would be the disclosure of a trade secret to a competitor, that trade secret very valuable to defendant and the disclosure of it of great harm to defendant. The court sustained this and refused to compel production of the formula.

Plaintiffs offered evidence tending to show by statements made to the witness by officers of defendant, the amount of stick candy manufactured by defendant from the time of making this agreement down to the time plaintiffs had taken out a patent upon their process, the period mentioned in the petition being that period, that is from the date of the contract down to the taking out of the letters patent, no damages being claimed for any period subsequent to the taking out of the letters patent on the process which plaintiffs had discovered and patented. This was excluded as not covering the time between the making of the contract and taking out of the letters patent.

It was in evidence that one or more parties who had been working in the candy manufactory of plaintiffs, had been taken into the employ of defendant, one of the parties to the contract and a party plaintiff to the suit, Mr. Hoke, having, after the suit was instituted, withdrawn from his connection with plaintiffs and entered into the employ of defendant.

Plaintiffs offered and read in evidence a statement of stick candy made by defendant as follows:

"Jacketed Candy with Vegeto
from
August 1st to September 26, 1905.

2556 lbs. of Vegeto shipped to the Peckham, Walter and Echert Factories.

Used 1 lb. to the 100 lbs.—255,600 Centers.

Formula.

60 lbs. Glucose
40 lbs. Sugar
—

100 lbs.—20 per cent shrinkage on glucose
12
—

88 lbs. yield
2556 lbs. Vegeto
88
—

20448
20448
—

224,928 lbs.
1 lb. Vegeto to 88 lbs. candy.
224,928 lbs. net centers
56,232 lbs. added 25 per cent wrapper
—

281,160 lbs. net Jacketed Candy
120,000 lbs. made by Menne Factory
—

401,160 lbs. entire product."

We are compelled to hold that under this state of the evidence the learned trial court erred in sustaining the demurrer.

In the case of Stone v. Goss and Grasselli Chemical Co., commonly cited as Stone v. Grasselli Chemical Co., 65 N. J. Eq. 756, 63 L. R. A. 344, it is held that a party by his own conduct may put himself in such a position that he may even lose the advantage of future independent experiments and that where it was

impossible to decide how much of the improvement in the making of the product was to be attributable to his own independent effort and how much to the knowledge of the process which had been fraudulently acquired by him, every doubt is to be resolved against the party to the fraudulant act, if fraud is shown.

In the case at bar, it can hardly be said that defendant, by fraud, obtained knowledge of the process of plaintiffs or of any step in that process, but if it used the demonstration made at Louisville by Mr. Stuckes, in the presence of its representatives and at its request, as the basis for subsequent experiments, and that was the means of showing it the practicability of making a merchantable jacketed stick candy, even if in making it defendant made some change in either the process or the composition or "dope" used, it could not deprive plaintiffs of the benefit of the disclosure which they had made, that disclosure made under and in reliance upon the contract.

In Hubbard v. Allen, 123 Pa. St. 198, 1. c. 210, and in Kroegher v. The McConway, etc., Co., 149 Pa. St. 444, patent infringements being involved, it is held that while the article made by the defendant might not be the same as the article covered by the patent, if the articles were substantially alike in form and made under the assumption that they were made under the patent or under the permission obtained from the patentee, it would be sufficient ground for holding that the patent had been infringed and that the infringer had laid himself liable in damages for the infringement. The court says, in Kroegher v. The McConway Co., supra (1. c. 457): "Whether the patent was followed strictly or not was entirely immaterial. Plaintiff claims that the modification was devised by himself and merely consisted in making the die in two pieces instead of three; and the evidence is indisputable that the article that defendant did make was made upon the plans, under the instruction, and with the

identical dies that were got from the plaintiff. Whether it was the thing patented or not, it was the thing defendant procured from plaintiff and agreed to pay for.''

In Tabor v. Hoffman, 118 N. Y. 30, it is said at page 36: ''If a valuable medicine, not protected by patent, is put upon the market, anyone may, if he can by chemical analysis and a series of experiments, or by any other use of the medicine itself, aided by his own resources only, discover the ingredients and their proportions. If he thus finds out the secret of the proprietor, he may use it to any extent that he desires without danger of interference by the courts. But, because this discovery may be possible by fair means, it would not justify a discovery by unfair means, such as the bribery of a clerk, who in course of his employment had aided in compounding the medicine, and had thus become familiar with the formula. The courts have frequently restrained persons, who have learned a secret formula for compounding medicines, beverages and the like while in the employment of the proprietor, from using it themselves or imparting it to others to his injury, thus in effect holding, as was said by the learned General Term, 'that the sale of the compounded article to the world was not a publication of the formula or device used in its manufacture.' ''

There is evidence in this case tending to show and from which the jury had a right to infer, that under the color of the agreement between the parties, defendant had acquired sufficient information to put it on to the line of experiment by which to reach the same result arrived at under the use of plaintiffs' process. There is also some evidence in the case tending to show that parties in the employ of plaintiffs, and who in that employment were familiar with the mode of manufacture by plaintiffs, had gone into the employ of defendant; even one of the original parties to the

agreement had done this and at the time of the trial was in the employ of defendant, not as a candy maker, it is true, but as a sales agent, who before that time had been a candy maker engaged in business with plaintiffs. This was evidence from which the jury had a right to infer that from the knowledge derived from the demonstration, from what was given it by plaintiffs, by what it had derived from former employees or associates of plaintiffs, it had been enabled to secure the attained result.

It is said by the Supreme Court of Massachusetts, in Peabody v. Norfolk, 98 Mass. 452, l. c. 461: "Although the process is carried on in a large factory, the workmen may not understand or be intrusted with the secret, or may have acquired a knowledge of it upon the like confidence. A secret of trade or manufacture does not lose its character by being confidentially disclosed to agents or servants, without whose assistance it could not be made of any value."

Referring to the power of the court to compel disclosure of a trade secret, it is to be said that it is one on which the authorities are at variance. The leading case protecting against disclosure is Morison v. Moat, 9 Hare 241, 20 L. J. Eq. (N. S.) 513. In Stone v. Grasselli Chemical Co., supra, the cases on the subject are very fully collated. In Peabody v. Norfolk, supra, it was contended that the danger of divulging the secret in the course of judicial investigation should prevent its disclosure. But the court said that in its opinion that was no satisfactory reason why a court of equity should refuse all remedy against the wrongdoers. It strikes us that that is applicable to this case, although not a proceeding in a court of equity. It is no less true that in an action at law, defendant is not protected in the perpetration of a wrong, nor suffered to reap the benefit of it, by the claim that to disclose the truth would subject him to loss. The claim of damage to result from disclosure of a trade secret is

not to prevail as a means to cover up fraud. [3 Wigmore on Evidence, sec. 2212.] All that the court is dealing with in this action is the damage to these plaintiffs. To that end it is not necessary to determine, under the facts in evidence, that the trial court should compel defendant to disclose its formula. Defendant declining to do so, did not deprive plaintiffs of the benefit of the testimony that they had produced by the exhibition to the jurors of the samples of "dope," the preparations used by the respective parties. If defendant elected to trust to the unaided determination of the jury as to what were the ingredients of this "dope" by mere inspection, it did so at its own risk. If the jury could determine by the exercise of their own faculties of sight, touch and smell, as between the two samples whether they were practically identical or that there was substantial similarity between them, it is sufficient. That the jurors were not expert chemists and might be led astray by inspection of the samples, was a risk that defendant exposed itself to when it refused to disclose the composition of its own material and the difference, if in point of fact any difference existed, between that and the material of plaintiffs. Furthermore, as held in the Pennsylvania cases above referred to, the imitation of one in the other need not be exact in all particulars, if essentially the two are similar. There was evidence before the jury, in the presence of these samples, on which it had a right to conclude that defendant was using the preparation and process discovered by plaintiffs, or the material parts thereof, a knowledge of which, so far as defendant was willing to receive that knowledge, had been given to it by plaintiffs under the contract between them.

The fact that plaintiffs had not fully or even at all communicated the composition of this material, grease or "dope," as it is called, to defendant, is no defense to this defendant. Having under the agree-

ment, acquired a partial knowledge of the process, defendant declined to allow plaintiffs or their representative to make further disclosures. The act of defendant, in preventing plaintiffs from making a full disclosure and from completion of their contractual obligations, did not shut out plaintiffs from a recovery of damages or the stipulated royalty. One cannot willfully shut his eyes and prevent disclosure by the other party and then claim that by reason of the non-disclosure that party with whom he has contracted is cut off from all claim for damages under the contract.

In Claudius v. West End Heights Amusement Co., 109 Mo. App. 346, 84 S. W. 354, this court held that where by its own act defendant had prevented the fulfillment of the contract and had so acted that the plaintiff could not properly go on with his part of it, that in an action against the refusing company for breach of contract, plaintiff could not be held to the fulfillment of his contract in the further performance of it but could recover his damages, notwithstanding such failure on his part. Practically the same rule was announced in Halpin v. Manny, 57 Mo. App. 59.

The learned trial court erred in excluding the testimony that was offered as to the amount of candy manufactured by defendant at the time the contract was made. That was some evidence of the extent to which defendant was engaged in the business.

Furthermore, as going to the question of arriving at the assessment of damages, if defendant chose to keep no accounts separating the two kinds of candy and by its act in so doing made it impossible to distinguish the one from the other, or the amount of money that was saved to it by the use of the process of plaintiffs, if it did use that or a like process, it falls within the rule following the suppression of evidence, a rule distinctly announced by our Supreme Court in the case of Pomeroy v. Benton, 77 Mo. 64, l.

c. 84, and following. It falls within the rule that the suppression of evidence for the purpose of a trial is like unto spoliation and is ground for presuming all that is claimed by the adversary. The preservation of positive evidence as to sales was within the power of defendant, whose interest would naturally be to produce it. Where it has neither preserved that evidence nor on proper demand produced it, all presumptions are against it, and it was for the jury to determine what, under these facts, should be the award of damages.

Plaintiffs had made out, at the close of their case, a prima facie one, authorizing them to take the verdict of the jury, facts on which the jury had a right to draw the inference of liability, and it was error in the learned trial court to take the case from the jury.

We have examined the cases to which we are referred by the learned counsel for respondent and do not think that they sustain counsel on any points made, nor afford warrant for the action of the trial court in driving plaintiffs to a nonsuit.

The judgment of the circuit court is reversed and the cause remanded. *Nortoni* and *Caulfield, JJ.,* concur.