A. SEYMOUR BROWN, Plaintiff, *v.* WILBUR L. FERRIS, Also Known as WILLIAM FERRIS, Defendant.

Municipal Court of the City of New York, Borough of Manhattan, Third District, January, 1924.

**Copyrights — production of play — when dramatic presentation of literary composition deemed not to constitute a publication by the author.**

A dramatic presentation of a literary composition as set forth in manuscript does not constitute a publication thereof by the author.

Plaintiff, under a contract, wrote a playlet for defendant which was called " Old King Cole " or " In King Cole's Court," an uncopyrighted composition in which the general public as against the author had no rights, and delivered the same to defendant. After the sketch had been put into rehearsals and played for several weeks to the public, there was a conference between plaintiff and defendant relative to changes in the playlet and when it was again publicly presented it had been written by another author who was paid by defendant. In an action to recover compensation for plaintiff's literary production as set

forth in the contract it was admitted that the plaintiff's sketch had been and still is used by defendant. *Held,* that the production of plaintiff's playlet did not constitute a publication by him of his literary work tantamount to a dedication of the same to the public and that he was entitled to a judgment in his favor.

ACTION on contract.

*Harry Lewis,* for plaintiff.

*David G. Godwin,* for defendant.

PANKEN, J.   This is an action to recover on a contract entered into between the parties to this litigation, part of the advance reserved to be paid by the defendant to the plaintiff for the composition of a playlet or sketch, in effect a literary production, together with a weekly royalty.

It is not necessary, in order to arrive at a conclusion in this case, to consider the literary value of this playlet, sketch or skit. Its value has been determined by the parties to the contract, I assume commensurate with their literary tastes.

The contract provided for the payment of a stipulated amount before the plaintiff, who is the author, undertakes the writing of this playlet, and a further sum dependent upon its obtaining " big time " booking and thereafter a stipulated weekly royalty.

The author, the plaintiff herein, was to help in the directing and staging of this playlet before it was produced.

Inasmuch as the testimony has disclosed, it would appear that the plaintiff did write a playlet which was called " Old King Cole," or " In King Cole's Court," and delivered same to defendant herein. It was afterwards put into rehearsals, but the plaintiff had no hand in its rehearsing, staging or production. It was afterwards produced, publicly presented.

The sketch was played for several weeks, and then there was some conference between the plaintiff and defendant relative to changes.

There are several issues raised both by the pleadings and by the testimony adduced in the course of the trial. There is a very sharp conflict of evidence as to whether or not there was a return of the manuscript by the defendant to the plaintiff. However, this issue was of no importance. Then there was a sharp conflict as to what is meant by the term " big time " in the theatrical world, particularly as far as the vaudeville theatre is concerned. A good deal of expert testimony was introduced on that score. The constant changes in the theatrical business naturally cause changes in the meaning of the terms commonly used in connection therewith. It is evident from the testimony in the case that the

exhibition of what has become generally known as "moving pictures" in connection with vaudeville performances has brought about a material change in the meaning of the terms commonly used in the vaudeville business, and in particular in relation to the term "big time." In every calling or business, in course of time certain terms come to have, by their constant repetition applied to similar situations, a definite meaning. I am convinced from the evidence in this case that this term "big time," as it is now used in the vaudeville business, relates to the price received for the act. Vaudeville acts now may, during one week or the larger part of a week, be designated as "big time," and then designated as small time acts, depending on the price or remuneration received for the act. It follows that the sketch or act concerned in this litigation has played "big time," having received upwards of $1,000 a week.

The important question before the court is not really a question of fact. This playlet, "Old King Cole," was not copyrighted, so that the plaintiff herein has not availed himself of the rights and protection of authorship extended to authors under our law, so that if rights accrued to him they must be found in the common law.

It is undisputed that when the playlet was again publicly presented it was in a new form; in effect, it was rewritten, and it appears from the evidence in the case the defendant paid some author for rewriting it.

Did the public production of this playlet constitute a publication by the plaintiff of his literary work tantamount to a dedication of same to the public, and has the plaintiff by his production surrendered all his rights in his literary production to the public?

The law on the question seems to be well settled that the publication of a literary work by an author is a dedication of same to the public; it becomes public property, unless, of course, he reserves such rights as the law allows him by copyright. That is true as regards literary productions generally. There is, however, a different rule governing literary productions of the type and character involved herein.

In *McCarthy & Fisher, Inc.*, v. *White*, 259 Fed. Rep. 364, Judge Augustus N. Hand says (p. 365): "The defendant insists that the presentation of the song by Holtz in vaudeville prior to the date of copyright was a complete dedication to the public. It is, however, well settled that a public performance of a dramatic or musical composition is not an abandonment of the composition to the public."

Of course, it is conceivable that a literary production in dramatic form, or even a musical composition, might be abandoned to the

public by its author if same is published.   The question is, however, what constitutes publication?   If the author publishes the manuscript that would be a dedication to the public and an abandonment of the rights of the author to the public.

A presentation, however, of the literary production as it is set forth in the manuscript would not constitute a publication.

In *Tabor* v. *Hoffman*, 118 N. Y. 30, it was held that an inventor, independent of letters patent, had an exclusive property in his invention until by publication it becomes the property of the public; and, in the language of Mr. Justice Vann, writing the prevailing opinion: " An inventor or author, has by common law, an exclusive property in his invention or composition, until by publication it becomes the property of the general public."

There has been no publication of this sketch such as entitled the public generally to a right in it as against the rights of the plaintiff.

There remains one more question to be determined.   It is argued that the rhymes known as " Old King Cole " were the basis of the literary production in question; that the plaintiff, having made use of the title " Old King Cole " and drew his inspiration for his production from the " Old King Cole " rhymes, he is not entitled to recover in this case.

A person may adapt even a literary production and acquire in it a right which the courts will protect.

In the instant case it appears both from the testimony and the pleadings that the composition or literary production of the plaintiff has been used by the defendant subsequent to the Beechhurst conference as rewritten.   It is admitted on the part of the defendant that the sketch written by the plaintiff has been and still is used by him, the claim being made that it has been rewritten by another author.

The plaintiff evidently has no objection to modifications and changes, important or otherwise, in his original sketch.   All he seeks to recover is compensation for the use of his literary production as set forth in the contract.   To that he is entitled.   It follows, therefore, that plaintiff is entitled to judgment.

Judgment accordingly.