BENJAMIN F. TABOR, Respondent, v. WILLIAM M. HOFFMAN Appellant.

In an action to restrain defendant from using certain patterns of a pump alleged to have been surreptitously copied from patterns belonging to plaintiff which had not been made public, it appeared that plaintiff had invented a pump the patent for which had expired; that he was manufacturing and selling a pump containing various improvements upon the original without having patented them; such improvements were incorporated in his patterns; these he kept in his exclusive possession, and never made them public. Defendant hired a man who was employed by plaintiff to repair the patterns, to make copies of them. Plaintiff's pump as put upon the market, does not conform to the patterns, because it is made of brass and iron, which expand unequally in the finished casting and contract unequally when cooling, during the process of casting and therefore the size of the patterns could not be discovered by merely using the different sections of the pump, but various changes were necessary which without the patterns could only be ascertained by experiments involving the expenditure of money and time. *Held* (FOLLET, Ch.

J., dissenting), that plaintiff was entitled to the relief sought; that the patterns were a secret device which plaintiff had not published by putting his improved pump on the market unpatented, and which was his exclusive property until he abandoned it by publication or it was fairly discovered by another.

An inventor has, independent of letters patents, an exclusive property in his invention, until by publication it becomes the property of the public. Reported below (41 Hun, 5).

(Argued October 29, 1889; decided December 10, 1889.)

Appeal from judgment of the General Term of the Supreme Court, in the fifth judicial department, entered upon an order made October 22, 1886, which affirmed a judgment in favor of plaintiff, entered upon the decision of the court on trial at Special Term.

The object of this action was to restrain the defendant from using certain patterns alleged to have been surreptitiously copied from patterns belonging to the plaintiff that had not been made public.

The trial court found that the plaintiff, having invented a pump known as "Tabor's Rotary Pump," which was patented, made a complete set of patterns to manufacture the same; that he necessarily spent much time, labor and money in making and perfecting such patterns, which were always in his exclusive possession; that from time to time he made improvements upon the pump and incorporated the same in the patterns, which were never thrown on the market nor given to the public; that one Francis Walz, after the patents had expired, surreptitiously made for the defendant a duplicate set of said patterns from measurements taken from the patterns of the plaintiff, without his knowledge or consent while they were in the possession of said Walz to be repaired; that before the commencement of this action · the defendant, with knowledge of all these facts and without the consent of the plaintiff, had commenced to make and since then has made pumps from said patterns, thus obtained; that the plaintiff has established a large and profitable trade in said pumps which "will be injured and the plaintiff damaged, if the defendant is permitted" to continue to manufacture from said patterns.

The trial court further found, upon the request of the defendant, "that a competent pattern-maker can make a set of patterns from measurements taken from the pump itself without the aid of plaintiff's patterns," but refused to find, upon the like request, that this could be done "with little more expense and trouble than from measurements taken from plaintiff's said patterns."

It appears from the evidence that the finished pump "does not comply with the patterns," because it is made of brass and iron which expand unequally in the finished casting and also contract unequally when cooling during the process of casting; that some of the patterns are subdivided into sections, which greatly facilitates measurements and drawings, as each section can be laid flat upon the wood or paper; and that it would take longer to make a set of patterns from the pump than it would to copy the perfected patterns themselves.

The Special Term by its final decree, restrained the defendant "from manufacturing any more pumps from the set of patterns made by Francis Walz from measurements taken from the plaintiff's patterns * * * and from selling, disposing of or using in any manner said patterns."

*Brundage & Chipman* for appellant. Plaintiff cannot maintain this action in equity, for he has an adequate remedy at law. (*Avery* v. *E. W. Co.*, 82 N. Y. 582; *Jerome* v. *Ross*, 7 Johns. Ch. 315; *Hart* v. *Mayor, etc.*, 9 Wend. 571; *Watson* v. *Hunter*, 5 Johns. Ch. 169; *Camp* v. *Matheson*, 30 Ga. 170; *Banks* v. *Busey*, 34 Md. 437; *Murphy* v. *Harrison*, 29 Ark. 340; *Harkinson's Appeal*, 78 Pa. 196; *Balcom* v. *Julien*, 22 How. 349; *Whittlesy* v. *H. etc., R. R. Co.* 23 Conn. 421; *T. & B. R. R. Co.* v. *B. etc., R. R. Co.*, 86 N. Y. 107; *Hyatt* v. *Bates*, 40 id. 164; *Thompkins* v. *Hawkins*, 13 W'kly Dig. 367; *Hepp* v. *Babin*, 18 How. [U. S.] 271.) He had no exclusive property in his invention, time, labor and expense. (*Potter* v. *McPherson*, 21 Hun, 559, 563; *Shook* v. *Daly*, 49 How. 366; *Palmer* v. *De Witt*, 47 N. Y. 532; *Dudley* v. *Mahew*, 3 id. 9; Curtis on Patents, 19;

*Clemens* v. *Belford*, 14 Fed. Rep. 728; *Wheaton* v. *Peters* 8 Pet. 591; 2 Parsons on Contracts, 257; 2 Kent Com. 366; *Wees* v. *Peltzer*, 75 Ill. 475; *Little* v. *Hall*, 18 How. [U. S.] 170; *Wall* v. *Gorden*, 12 Abb. [N. S.] 349.) If plaintiff was deprived of his property, he may be compensated in damages. *Blake* v. *Brooklyn*, 26 Barb, 301; *Youngblood* v. *Youngblood*, 54 Ala. 486; *Huff* v. *Ripley*, 58 Ga. 11.) If a patent expires between the time of filing the bill and the hearing, no injunction will be allowed against the future use of the article. (High on Inj. § 623. *Imlay* v. *Norwich*, 4 Blatch, 227; *Mersoon* v. *Pease*, 24 Fed. Rep. 741; *Adam* v. *Huvards*, 19 id. 317; *Watson* v. *Hunter*, 5 Johns. Ch. 139; *Monk* v. *Harper*, 3 Edw. Ch. 159; *Hepp* v. *Babin*, 18 How. (U. S.) 271; *Kendall* v. *Windsor*, 21 id. 322; *Deming* v. *Chapman*, 11 How. Pr. 382; *Oertel* v. *Jacoby*, 44 id. 179; *Cobbett* v. *Woodward*, 3 Eng. Rep. 795; 14 Eq. Cas., 407; *Clark's Appeal*, 107 Penn. St. 436; *Rees* v. *Peltzer*, 75 Ill. 475; *Watson* v. *Hunter*, 5 Johns. Ch. 169.) Equity will not entertain an action merely to redress a wrong already committed; the remedy is at law; injunction is a preventive, not a punitive remedy. (*Monk* v. *Harper*, 3 Edw. Ch. 109; Willard's Eq. Juris. 441; *People ex rel.* v. *Clark*, 70 N. Y. 518; *Att'y-Gen.* v. *N. J. & C. R. R. Co.*, 2 Green's Ch. 136; *L. C. Nat. Bank* v. *Gunyan*, 6 Bush, 486; *Coker* v. *Simson*, 7 Cal. 340.) An injunction will not be granted in new cases not coming within well established principles. (*Dickey* v. *Reed*, 78 Ill. 261; *Mingg's Appeal*, 82 Penn. St. 373; *Ramsey* v. *E. R. R. Co.*, 38 How. Pr. 193.) Nor will a court of equity interfere to prevent an injury merely nominal or theoretical in its nature, although an action at law might be maintained for it. (*Bassett* v. *Salesbury*, 15 J. & S. 426; *Walrous* v. *Rodgers*, 16 Tex. 410.) After publication any one may copy directly from the article in the market. (*Ress* v. *Peltzer*, 475; *Oertel* v. *Jacoby*, 44 How. Pr. 179; *Cobbett* v. *Woodward*, 3 Eng. Rep. 795.)

*James C. Strong* for respondent. The " patterns " involved

in this case were the exclusive property of the plaintiff, in his exclusive possession, and to which he was entitled to exclusive use. (*Thompson* v. *Standhope*, Ambler, 737; *Duke of Queensbury* v. *Shebbeare*, 2 Eden, 329; 3 Waite's Actions and Def. 743; *Thompson* v. *Standhope*, Ambler, 737; *Duke of Queensbury* v. *Shebbeare*, 2 Eden, 329; *Sittle* v. *Hall*, 18 How. [U. S.] 170; *Palmer* v. *De Witt*, 40 How. Pr. 295; 47 N. Y. 532; *Pope* v. *Carl*, 2 Aik. 342; *Perceval* v. *Phipps*, 2 Ves. & B. 19; *Woolsey* v. *Sudd*, 11 How. Pr. 49; 4 Duer, 379; *Peabody* v. *Norfolk*, 98 Mass. 452; *Morrison* v. *Moat*, 21 L. J. [U. S.] 248; 20 id. 513; *Hammer* v. *Barnes*, 26 How. Pr. 174; *Kiernan* v. *M. L. I. Co.*, 50 id. 194.) The fact that defendant could have made a set of patterns from a finished pump does not by any means give him the right to have a duplicate set made from plaintiff's patterns while in the hands of plaintiff's employe for repairs, or to make use of such duplicates. (*Kelly* v. *Morris*, L. R. [1 Eq. Div.] 697; *Cox* v. *S. & W. J. Co.*, L. R. [9 id.] 322; *Kiernan* v. *M. L. I. Co.*, 50 How. Pr. 198; *McGowin* v. *Remington*, 12 Penn. 56; *Gray* v. *Russell*, 1 Story, 11; *Farmer* v. *Calvert*, 7 Am. L. Rep. 365; *Williams* v. *W. U. T. Co.*, 17 J. & S. 140.) The mere fact that some of the pieces of patterns made for the defendant are not like the plaintiff's, does not prevent the plaintiff from obtaining an injunction, because it clearly appears that most of the duplicates (all but one, the stand, out of thirty odd pieces) were made from measurements taken directly from plaintiff's patterns. (*Sampson* v. *Rose*, 65 N. Y. 411, 421; *Starr* v. *Winnegar*, 3 Hun, 491.)

VANN, J. It is conceeded by the appellant that, independent of copyright or letters patent, an inventor or author, has, by the common law, an exclusive property in his invention or composition, until by publication it becomes the property of the general public. This concession seems to be well founded and to be sustained by authority. (*Palmer* v. *De Witt*, 47 N. Y. 532; *Potter* v. *McPherson*, 21 Hun, 559; *Hammer* v. *Barnes*, 26 How. Pr. 174; *Kiernan* v. *M. Q. Tel. Co.* 50

id. 194; *Woolsey* v. *Judd*, 4 Duer, 379; *Peabody* v. *Norfolk*, 98 Mass. 452; *Salomon* v. *Hertz*, 40 N. J. Eq. Rep. 400; Phillips on Patents, 333-341; Drone on Copyright, 97-139.)

As the plaintiff had placed the perfected pump upon the market, without obtaining the protection of the patent laws, he thereby published that invention to the world and no longer had any exclusive property therein. (*Rees* v. *Peltzer*, 75 Ill. 475; *Clemens* v. *Balford*, 14 Fed. Rep. 728; Short's Laws of Literature, 48.)

But the completed pump was not his only invention, for he had also discovered means, or machines in the form of patterns, which greatly aided, if they were not indispensable, in the manufacture of the pumps. This discovery he had not intentionally published, but had keep it secret, unless by disclosing the invention of the pump, he had also disclosed the invention of the patterns by which the pump was made. The precise question, therefore, presented by this appeal, as it appears to us, is whether there is a secret in the patterns that yet remains a secret, although the pump has been given to the world? The pump consists of many different pieces, the most of which are made by running melted brass or iron in a mold. The mold is formed by the use of patterns, which exceed in number the separate parts of the pump, as some of them are divided into several sections. The different pieces out of which the pump is made are not of the same size as the corresponding patterns, owing to the shrinkage of the metal in cooling. In constructing patterns it is neccessary to make allowances, not only for the shrinkage, which is greater in brass than in iron, but also for the expansion of the completed casting under different conditions of heat and cold, so that the different parts of the pump will properly fit together and adapt themselves by nicely balanced expansion and contraction to pumping either hot or cold liquids. If the patterns were of the same size as the corresponding portions of the pump, the castings made therefrom would neither fit together, nor if fitted, work properly when pumping fluids varying in temperature. The size of the patterns cannot be discovered by

merely using the different sections of the pump, but various changes must be made and those changes can only be ascertained by a series of experiments, involving the expenditure of both time and money. Are not the size and shape of the patterns, therefore, a secret which the plaintiff has not published and in which he still has exclusive property? Can it be truthfully said that this secret can be learned from the pump when experiments must be added to what can be learned from the pump before a pattern of the proper size can be made? As more could be learned by measuring the patterns, than could be learned by measuring the component parts of the pump, was there not a secret that belonged to the discoverer, until he abandoned it by publication, or it was fairly discovered by another?

If a valuable medicine, not protected by patent, is put upon the market, anyone may, if he can by chemical analysis and a series of experiments, or by any other use of the medicine itself aided by his own resources only, discover the ingredients and their proportions. If he thus finds out the secret of the proprietor, he may use it to any extent that he desires without danger of interference by the courts. But, because this discovery may be possible by fair means, it would not justify a discovery by unfair means, such as the bribery of a clerk, who in course of his employment had aided in compounding the medicine, and had thus become familiar with the formula. The courts have frequently restrained persons, who have learned a secret formula for compounding, medicines, beverages and the like while in the employment of the proprietor, from using it themselves or imparting it to others to his injury, thus in effect holding, as was said by the learned General Term, "that the sale of the compounded article to the world was not a publication of the formula or device used in its manufacture." (*Hammer* v. *Barnes, supra; Morison* v. *Moat,* 21 L. J. [N. S.] 248; *Š. C.,* 20 id. 513; *Green* v. *Folgham,* 1 Sim. & Stu. 398; *Yovatt* v. *Winyard,* 1 Jac. & Walk. 394; *Peabody* v. *Norfolk, supra; Salomon* v. *Hertz, supra;* Kerr on Injunctions, 181; High on Injunctions, § 663.)

The fact that one secret can be discovered more easily than another, does not affect the principle. Even if resort to the patterns of the plaintiff was more of a convenience than a necessity, still if there was a secret, it belonged to him, and the defendant had no right to obtain it by unfair means, or to use it after it was thus obtained. We think that the patterns were a secret device that was not disclosed by the publication of the pump, and that the plaintiff was entitled to the preventive remedies of the court. While the defendant could lawfully copy the pump, because it had been published to the world, he could not lawfully copy the patterns because they had not been published, but were still, in every sense, the property of the plaintiff, who owned not only the material substance, but also the discovery which they embodied.

The judgment should be affirmed, with costs.

FOLLETT, Ch. J. dissenting : An inventor of a new and useful improvement has a right to its exclusive enjoyment, which right he may protect by a patent or by concealment. The plaintiff's patent had expired and all of the parts of the pump represented by the patterns had been for a long time on sale in the form of a completed pump. The patent on the original invention having expired and the plaintiff having voluntarily made the subsequent improvements public by selling the improved article, he lost his right to their exclusive use. The plaintiff's counsel concedes this ; but says that while patterns could be made from the several parts of the pump, from which pumps like those made and sold by the plaintiff could be produced, that it was more difficult to make patterns from sections of the pump than from the patterns. This was so found by the court and cannot be gainsaid. The invention was not the patterns but the idea represented by them, to which the plaintiff had lost his exclusive right. Neither the defendant nor the man who made the patterns sustained any relation by contract with the plaintiff. They were neither the servants nor partners of the plaintiff, and they owed him no duty not owed by the whole world. The act, at most, was a

trespass and the plaintiff made no case for equitable relief. It is neither asserted nor found that the defendant is unable to respond in damages. The cases cited to sustain the judgment arose out of the relation of master and servant or between partners, and in all of them the idea had not been disclosed to the public, but had been kept secret by the inventor.

The judgment should be reversed and a new trial granted, with costs to abide the event.

All concur with VANN, J., except FOLLETT, Ch. J. dissenting, and BRADLEY and HAIGHT, JJ., not sitting.

Judgment affirmed.