EDGAR H. WOOD ASSOCIATES, INC. *vs.* ALEX J. SKENE
& others.

Norfolk.   January 6, 1964. — April 17, 1964.

Present: CUTTER, KIRK, SPIEGEL, & REARDON, JJ.

*Copyright. Architect. Personal Property,* Architect's plans. *Publication. Building Laws. Public Record. Equity Jurisdiction,* Copyright. *Damages,* Copyright. *Equity Pleading and Practice,* Appeal.

A denial as a matter of law of a motion in a suit in equity for leave to file a substitute bill following sustaining of a demurrer to the original bill was in substance an interlocutory decree open for consideration upon appeal from a final decree dismissing the original bill.   [353]

The decisions in *Sears, Roebuck & Co.* v. *Stiffel Co.* 376 U. S. 225, and *Compco Corp.* v. *Day-Brite Lighting, Inc.* 376 U. S. 234, recognize that by virtue of 17 U. S. C. § 2 (1958) common law copyright may exist in unpublished material not within the public domain.   [355–356]

Discussion of cases considering common law copyright in unpublished material and publication which terminates such copyright.   [357–359]

Filing of architectural plans with a municipal building department as required in order to obtain a permit to construct the building drawn was not a general publication of the plans which terminated the common law copyright therein of the architect who had drawn the plans pursuant to an agreement with his client whereby he, the architect, retained "all . . . [his] property rights, title and interest to the said plans for all times."   [361]

Architectural plans filed with a municipal building department are "public records" within G. L. c. 66, § 10; but the permission granted by § 10 to inspect and copy the filed plans does not extend to making copies impairing the architect's common law copyright in the plans nor constitute a general publication of them terminating that copyright.   [362–363]

Construction of an apartment building, open to the general public, from plans drawn by an architect who in his agreement with his client had retained "all . . . [his] property rights, title and interest to the said plans for all times" did not constitute a publication of the plans and did not terminate the architect's common law copyright in them.   [363–365]

The availability of Federal copyright protection for published material under 17 U. S. C. (1958) does not require the proprietor of unpublished material to abandon his common law copyright and secure a Federal copyright in order to preserve his property rights in the material.   [365]

There would be a case for relief in a suit by an architect for derogation of a common law copyright of the plaintiff if it should appear that the plaintiff drew plans for a large apartment house under an agreement with his client whereby the plaintiff retained "all . . . [his] property rights, title and interest to the said plans for all times," that the plans were filed with the municipal building department as required in order to secure a building permit, that the apartment house was constructed and open to the public, and that thereafter the plans were converted by the defendants and copied and used by them in connection with construction of an apartment house identical in design and specifications to the apartment house previously constructed.   [353–354, 366]

Upon remand to the Superior Court of a suit in equity by an architect for further proceedings on a substitute bill which set forth a case for relief for derogation of a common law copyright of the plaintiff in plans drawn by him and used for the construction of an apartment house in a city and thereafter converted by the defendants and copied and used by them for purposes looking to construction of an identical apartment house in a town, if it should appear that the town apartment house was in process of construction or completed, the plaintiff, instead of receiving injunctive relief against future use of the plans, should recover

the fair market value of a set of his plans as plans already used for the city apartment house and not novel; the recovery should not include any amount normally allocable as a fee for architectural supervision of construction.  [366]

BILL IN EQUITY filed in the Superior Court on January 7, 1963.

A motion for leave to file a substitute bill was denied, and a final decree dismissing the original bill was entered, by *Bolster, J.*

*L. Johnson Callas* (*Martin D. Woolf* with him) for the plaintiff.

*Herbert P. Wilkins* for Frank Portugal & others.

*Robert D. Kilmarx* for Alonzo B. Reed, Inc. & another.

*David C. Ahearn* for Alex J. Skene & another.

REARDON, J.  The plaintiff (Wood) appeals from a final decree dismissing its original bill as to all the defendants, demurrers to it having previously been sustained.  A motion for leave to file a substitute bill of complaint was denied by the trial judge as a matter of law because the substitute bill "does not state a cause of action in [e]quity."  The denial of the motion was in substance an interlocutory decree (*Bressler* v. *Averbuck,* 322 Mass. 139, 143; see *Corbett* v. *Gallagher,* 225 Mass. 480, 482), and we treat it as open for consideration upon appeal from the final decree.  G. L. c. 214, § 27.  *Arsenault* v. *Arsenault,* 337 Mass. 189, 193.

The allegations of the substitute bill are as follows. Wood is a Massachusetts corporation comprising an association of architects.  The corporation is a duly licensed architect.  One Thomas Moylan retained Wood to draft plans for the erection of two sections of buildings, each section to contain 110 apartments, in Woburn.  After acceptance of the plans by Moylan they were filed with the building department of Woburn and approved.  Filing was required in order to obtain a building permit.  Moylan then commenced erection of one of the two sections.  He and Wood had entered into an agreement under the terms of which Wood retained "all . . . [its] property rights, title and interest to the said plans for all times."  Moylan employed

the defendant Portugal to supervise construction of the building in accordance with the plans. About the same time the defendant Skene desired to erect on land owned by him in Norwood apartment houses similar to those of Moylan. As the result of a conspiracy between Skene and Portugal, Portugal left Moylan's employ, entered that of Skene, and took with him to Skene plans of the Woburn buildings. Other defendants, the Wallaces, organized a real estate trust under the name of Windsor Gardens Co. of Norwood, Massachusetts. The trust bought Skene's Norwood land. Skene transmitted the plans to the Wallaces who in turn gave them to the defendants, Alonzo B. Reed, Inc. and its employee Vincent Sullivan, to be copied. Reed's name and that of Sullivan were affixed to the copied plans. These plans were presented to the building commissioner of Norwood and to others. In sum, Wood's plans were copied and are being or were used to construct in Norwood buildings identical in design and specifications to the Woburn buildings being erected.[1]

Wood did not resort to statutory copyright, and we are concerned solely with an examination of its rights under the common law. Common law copyright exists in this Commonwealth. "That the right of property which an author has in his works continues until by publication a right to their use has been conferred upon or dedicated to the public, has never been disputed." *Tompkins* v. *Halleck,* 133 Mass. 32, 35. See *F. W. Dodge Co.* v. *Construction Information Co.* 183 Mass. 62, 63–65; *Baker* v. *Libbie,* 210 Mass. 599, 604.

### THE EFFECT OF THE FEDERAL COPYRIGHT STATUTE UPON COMMON LAW COPYRIGHT.

At the outset we must consider the effect upon common law copyright of two important opinions of the Supreme Court of the United States rendered since the arguments in the present case.

---

[1] Neither the substitute bill nor the original bill states how close the first section of the Woburn project was to completion at the time the plans were copied by some of the defendants. We shall assume a total completion.

In the first of these, *Sears, Roebuck & Co.* v. *Stiffel Co.* 376 U. S. 225, the question was whether the unfair competition law of Illinois could, "consistently with the federal patent laws, impose liability for or prohibit the copying of an article which is protected by neither a federal patent nor a copyright" (p. 225). Stiffel's patents on a "pole lamp" were held invalid in the District Court for want of invention. Sears put on the market "a substantially identical lamp, which it sold more cheaply, Sears' retail price being about the same as Stiffel's wholesale price" (p. 226). The Court of Appeals affirmed the holding of the District Court that there was unfair competition under Illinois law. The Supreme Court reversed, and speaking through Mr. Justice Black stated: "Just as a State cannot encroach upon the federal patent laws directly, it cannot, under some other law, such as that forbidding unfair competition, give protection of a kind *that clashes with the objectives of the federal patent laws.* . . . To allow a State by use of its law of unfair competition to prevent the copying of an article which represents too slight an advance to be patented would be to permit the State to block off from the public something *which federal law has said belongs to the public.* The result would be that while federal law grants only 14 to 17 years' protection to genuine inventions, . . . States could allow perpetual protection to articles too lacking in novelty to merit any patent at all under federal constitutional standards. This would be too great an encroachment on the federal patent system to be tolerated" (emphasis supplied) (pp. 231–232). The opinion also stated that "because of the federal patent laws a State may not, when the article is *unpatented and uncopyrighted, prohibit the copying of the article itself or award damages for such copying*" (emphasis supplied) (pp. 232–233). It seems plain to us that Mr. Justice Black was not speaking about unpublished material.

In the second case, *Compco Corp.* v. *Day-Brite Lighting, Inc.* 376 U. S. 234, on a set of facts substantially similar to those in the *Sears, Roebuck* case, the court, again through Mr. Justice Black, announced a similar holding and said:

"Today we have held in *Sears, Roebuck & Co.* v. *Stiffel Co.*, . . . [*supra*], that when an article is unprotected by a patent or a copyright, state law may not forbid others to copy that article. To forbid copying would interfere with the federal policy, found in Art. I, § 8, cl. 8, of the Constitution and in the implementing federal statutes, *of allowing free access to copy whatever the federal patent and copyright laws leave in the public domain*" (emphasis supplied) (p. 237). A careful reading of these two opinions does not convince us that they have struck down common law copyright, which protects unpublished material, in those States which recognize its existence, or deprived such States of the right to regulate it. There is a distinction between that protection afforded under State unfair competition laws to the unpatentable article in the public domain and the protection extended through common law copyright to an unpublished work. This distinction finds recognition in the *Compco* case in the reference to the Federal policy of "allowing free access to copy whatever the federal patent and copyright laws leave in the public domain" (p. 237), and in the *Sears, Roebuck* case at p. 231, fn. 7, which alludes to "that section of the Copyright Act which expressly saves state protection of unpublished writings but does not include published writings, 17 U. S. C. § 2 [1958]."[2] In these two cases the Supreme Court has held that the States may not contravene the Federal statutory patent and copyright laws. In our view these decisions recognize that common law copyright may exist, by virtue of 17 U. S. C. § 2 (1958), in unpublished material which has not become a part of the public domain. Accordingly, if Wood's plans have not been so published as to be within the public domain, the Supreme Court decisions do not preclude relief in the predatory situation here alleged.[3]

---

[2] "Nothing in this title shall be construed to annul or limit the right of the author or proprietor of an unpublished work, at common law or in equity, to prevent the copying, publication, or use of such unpublished work without his consent, and to obtain damages therefor."

[3] A comprehensive note, Developments in the Law, Competitive Torts, 77 Harv. L. Rev. 888, at 942–946, treats generally the subject of Federal preemption and recognizes that "the general acceptance of perpetual common law

The basic differences between statutory and common law copyright have been stated by Katz, Copyright Protection of Architectural Plans, Drawings, and Designs (hereinafter Katz), 19 Law and Contemporary Problems, 224, 227–228: "(a) Common law copyright exists solely in unpublished works; statutory copyright (with certain specific exceptions) exists only in published works. (b) Common law copyright protection is automatically accorded all unpublished works from the moment of their creation. The mere act of publication will not automatically grant statutory protection to a work; there must be, in addition, strict compliance with the statutory formalities. (c) Common law copyright protection is perpetual; statutory copyright is for a term of years. (d) Common law copyright is regulated by the several states; statutory copyright is solely a matter for the Federal Government." See *Bobbs-Merrill Co.* v. *Straus,* 210 U. S. 339, 346–347.

The principal issue in dispute is whether Wood lost whatever common law rights it had in its plans (1) when they were filed with the Woburn building department, or (2) when Moylan constructed a building from them. We deal with a matter of first impression in this Commonwealth. Only six cases are in point from other jurisdictions, none by a court of last resort. They are in conflict and so is such literature as exists on the subject.

THE REPORTED CASES.

The first of the reported cases is *Gendell* v. *Orr,* 13 Phila. 191 (Pa. Common Pleas), decided in 1879. An architect and builder erected a porch "of a new and novel design and artistic beauty" (p. 191) along the front of his house, which stood bordering a highway. Later he sought to enjoin the construction of copies of his porch. The court held that the completion of such a design and its exposure to public gaze for three years constituted a general publication of the work.

<hr>

copyright for unpublished works weighs against the finding of preemption or a time limitation" (p. 944). This is supported by a line of decisions from *Wheaton* v. *Peters,* 8 Pet. 591, to *Public Affairs Associates, Inc.* v. *Rickover,* 284 F. 2d 262 (Ct. App. D. C.), judgment vacated on a different ground, 369 U. S. 111.

There followed in 1903, *Wright* v. *Eisle,* 86 App. Div. (N. Y.) 356. An architect had prepared plans for a private residence which were "duly filed with the building department of the city of Mount Vernon" (p. 357). After the residence was built, the defendant sought to procure a duplicate set of plans from the architect. He declined to meet the architect's price and thereafter retained a third party whose plans led to the erection of a building "conforming substantially" (p. 357) to the first residence. The architect sought recovery for the value of the second set of plans. The New York court held that when the architect had filed the plans in a public office, he had "published his work to the world" (p. 358) and lost his exclusive right to them.

In *Kurfiss* v. *Cowherd,* 233 Mo. App. 397 (1938), an architect drew plans to modernize an old house. As modernized the house was opened to public inspection. The pleadings indicate that the defendants made copies of the plans and used them in the construction of other houses. The original plans were not filed in a public office. It was held that "this unrestricted exhibition" (p. 408) of the modernized house was a publication of the plans.

In 1959, on the authority of *Wright* v. *Eisle, supra,* the Supreme Court of New York held that the filing of plans with a building department in connection with the erection of one house precluded the architect from recovery of compensation from one defendant who erected additional houses from the same plans which came to him from his codefendant for whom the first house had been built. *Tumey* v. *Little,* 18 Misc. 2d (N. Y.) 462.

The earlier cases were reviewed in an extended dictum in *DeSilva Constr. Corp.* v. *Herrald,* 213 F. Supp. 184 (M. D. Fla. 1962). The court was of opinion that the filing of plans with a building department in order to obtain a construction permit was a publication that terminated the common law copyright (pp. 194–195). But the court stated that a completion and exhibition of the building did not constitute such a publication of the plans (pp. 195–196).

The final case, *Smith* v. *Paul,* 174 Cal. App. 2d 744 (1959),

differs from those already discussed.[4]  Smith was not a licensed architect but was "in the business of designing homes" (p. 746).  He brought an action against the owner of a house and the contractor who built it on the ground that the plans employed in its construction had been drawn by him for a third person.  The plans had been originally filed in a county office as required by law in order to obtain a building permit, and a house had been constructed from them.  Smith had preserved his ownership in the plans in his contract with his client.  Paul had copied them.  The court held that there had been only a limited publication of the plans and hence that the designer had not lost his common law copyright in them.  It pointed out that "[t]he purpose of the requirement of filing the plans in a government office is to protect the public from unsafe construction — not to take away from the architect his common-law property rights. . . .  The architect derives no profit from the deposit of his plans with the building department.  He does not thereby sell his work and has no intention of dedicating it to the public" (p. 750).  The court emphasized that a filing was necessary in order to build.  The court also held that a mere viewing of the house by guests of the owner, limited in number, constituted no general publication of the plans.  The reasoning was that while exhibition of the exterior to the public might cause a loss of the common law copyright to the exterior design, "it . . . [was] not a general publication of the detailed plans themselves" (p. 758).

### GENERAL AND LIMITED PUBLICATION.

The concepts of general and limited publication alluded to in *Smith* v. *Paul, supra,* were defined in the leading case of *Werckmeister* v. *American Lithographic Co.* 134 Fed. 321, 326 (2d Cir.).  Only a general publication terminates a common law copyright.  It is "such a disclosure, communication, circulation, exhibition, or distribution of the subject of copyright, tendered or given to one or more members of the

---

[4] The common law copyright which exists by virtue of the case law in this Commonwealth has been codified in California.  Cal. Civil Code, §§ 980–985.

general public, as implies an abandonment of the right of copyright or its dedication to the public" (p. 326). A limited publication is "one which communicates a knowledge of its contents under conditions expressly. 'or impliedly precluding its dedication to the public" (p. 324). Further, to be general a publication must be such " '. . . as to justify the belief that it took place with the intention of rendering . . . [the] work common property.' " *American Tobacco Co.* v. *Werckmeister,* 207 U. S. 284, 299–300. *Continental Cas. Co.* v. *Beardsley,* 253 F. 2d 702, 707 (2d Cir.), cert. den. 358 U. S. 816. See *White* v. *Kimmell,* 193 F. 2d 744, 747 (9th Cir.). As more recently stated, "a . . . publication which communicates the contents of a manuscript to a definitely selected group and for a limited purpose, and without the right of diffusion, reproduction, distribution or sale, is considered a 'limited publication,' which does not result in loss of the author's common-law right to his manuscript[5]; but . . . the circulation must be restricted both as to persons and purpose, or it cannot be called a private or limited publication." *White* v. *Kimmell, supra,* 746–747. *American Visuals Corp.* v. *Holland,* 239 F. 2d 740, 744 (2d Cir.). *Continental Cas. Co.* v. *Beardsley, supra,* 706–707. While the test is properly one of intention, it is clear that the unexpressed, subjective intention of the creator cannot be allowed to govern (see *National Comics Publications, Inc.* v. *Fawcett Publications, Inc.* 191 F. 2d 594, 598 [2d Cir.]); rather the implications of his outward actions to the reasonable outsider are controlling.

The Federal cases thus recognize fully that there may be a fairly substantial but limited distribution of material sus-

[5] "[The Federal c]ases . . . indicate that . . . the courts apply different tests of publication depending on whether plaintiff is claiming protection because he did not publish and hence has a common law claim of infringement — in which case the distribution must be quite large to constitute 'publication' — or whether he is claiming under the copyright statute — in which case the requirements for publication are quite narrow. In each case the courts appear so to treat the concept of 'publication' as to prevent piracy." *American Visuals Corp.* v. *Holland,* 239 F. 2d 740, 744 (2d Cir.). *Hirshon* v. *United Artists Corp.* 243 F. 2d 640, 644–645 (Ct. App. D. C.). *Continental Cas. Co.* v. *Beardsley, supra,* 707. See *Public Affairs Associates, Inc.* v. *Rickover,* 284 F. 2d 262, 270–271 (Ct. App. D. C.), judgment vacated on a different ground, 369 U. S. 111.

ceptible of statutory copyright[6] without putting the material in the public domain and without forfeiture of the author's common law copyright in it. It remains to determine whether a general publication has occurred here.

### FILING OF PLANS.

We have already noted that the New York decisions have held that a filing with a building department does release architectural plans into the public domain. *Wright* v. *Eisle,* 86 App. Div. (N. Y.) 356. *Tumey* v. *Little,* 18 Misc. 2d (N. Y.) 462. See *DeSilva Constr. Corp.* v. *Herrald,* 213 F. Supp. 184 (M. D. Fla.). In both New York cases it appears that a further reason for denying recovery was the absence of an agreement between the architect and his client that the ownership of the plans should not pass to the client by virtue of the commission. The substitute bill before us alleges that Wood specifically retained its property rights in the plans in its agreement with Moylan. In addition, *Wright* v. *Eisle* is distinguishable in that there the evidence did not show that the defendant or anyone in his behalf had ever actually copied the plans. 86 App. Div. (N. Y.) at 358.

There is no basis for concluding that, by filing with the Woburn officials, Wood made manifest any objective intention to publish the plans generally. See Note, 73 Harv. L. Rev. 1391. On the contrary, the protective clause in Wood's contract with Moylan indicates that the intention was to preserve Wood's common law rights in them. The sole reason for the filing of the plans was to procure official approval of them. The filing was a publication to but a single entity for a limited purpose. To hold that, in filing, an architect makes a general publication would be to limit his ability to effect a sale of more than one set of plans.

As already pointed out, this view was recognized in *Smith* v. *Paul,* 174 Cal. App. 2d 744. That case held that a necessary filing of architectural plans was not a general publication, despite a general statutory right to inspect and secure

---

[6] Architectural plans may be copyrighted under the Federal statute. *DeSilva Constr. Corp.* v. *Herrald,* 213 F. Supp. 184, 193 (M. D. Fla.). See 17 U. S. C. §§ 5 (g), (i) (1958); 37 C. F. R. (1960) § 202.12 (a).

copies of "any public writing" on the part of the general public.[7] This Commonwealth has a similar statutory provision: "Every person having custody of any public records shall, at reasonable times, permit them to be inspected and examined by any person, under his supervision, and shall furnish copies thereof on payment of a reasonable fee. . . ." G. L. c. 66, § 10. The filed plans are without question "public records."[8] The argument is advanced that in G. L. c. 66, § 10, the Legislature has in effect decreed that a filing of plans with a building department shall constitute a general publication. The power to copy public records has been said to be not limited by the use sought to be made of the copies. *Direct-Mail Serv. Inc.* v. *Registrar of Motor Vehicles,* 296 Mass. 353, 355–357. It must be clear, however, that the principal objective of Woburn in compelling a filing is to insure that the public will be protected from unsafe construction. See *Smith* v. *Paul, supra,* at 750. There is no indication that a second and unrelated objective, one to compel an architect to divest himself of the fruit of his labor as a condition precedent to obtaining a building permit, is within the purpose of the filing requirement or of G. L. c. 66, § 10.[9] ". . . [Requirements and] statutes do not govern situations not within the reason of their enactment and giving rise to radically diverse circumstances presumably not within the dominating purpose of . . . [their framers]." *Commonwealth* v. *Welosky,* 276 Mass. 398, 403, cert. den. 284 U. S. 684. Rather a compulsory divestment is "beyond the mischief intended to be reached" (*Commissioner of Corps. & Taxn.* v. *Dalton,* 304 Mass. 147, 150) by the filing requirement or the statute. See *A. Belanger & Sons, Inc.* v. *Joseph M. Concannon Corp.* 333 Mass. 22, 25.

In view of the broad common law protection given to unpublished material, we should be slow to attribute to the Legislature an intention in G. L. c. 66, § 10, to coerce a pub-

---

[7] Cal. Code Civil Procedure, §§ 1892, 1893.

[8] The definition of public records includes "any written or printed . . . paper . . . which any . . . employee of . . . a . . . town has received . . . for filing . . . ." G. L. c. 4, § 7, Twenty-sixth.

[9] Which dates back to St. 1851, c. 161, § 4.

lication destructive of common law rights. "A statute is not to be interpreted as effecting a material change in or a repeal of the common law unless the intent to do so is clearly expressed." *Pineo* v. *White,* 320 Mass. 487, 491. *Zoulalian* v. *New England Sanatorium & Benevolent Assn.* 230 Mass. 102, 105–106. *Corcoran* v. *S. S. Kresge Co.* 313 Mass. 299, 303. *Ferullo's Case,* 331 Mass. 635, 637. The words of G. L. c. 66, § 10, are of general application and suggest no specific intention to affect common law property rights.[10] Certainly, there has been no decided case in which this court has had occasion to hold that the right to copy a public record resulted in the loss of any literary property in the subject of that record.

In the light of what has been said, we hold that the filing requirement and G. L. c. 66, § 10, give the public the right to inspect and, if necessary, to copy the filed plans for purposes reasonably related to the objectives behind the filing requirement, for example, to determine whether a building constructed in accordance with plans will comply with zoning and safety laws. That right does not extend to making copies which will impair the architect's common law copyright and property in the plans. It is not the purpose of the filing requirement to facilitate and permit architectural plagiarism, or enable one to obtain free of charge the benefit of another's work and thus "to reap where it has not sown." *International News Serv.* v. *Associated Press,* 248 U. S. 215, 239.

We conclude that the public filing of plans in the circumstances alleged is only a limited publication of them. No objective intention to make a general publication appears.

### CONSTRUCTION OF A BUILDING.

We next consider whether the completion and exposure of the building which is the product of the plans constitutes such a general publication as will justify a copying of the *plans. Gendell* v. *Orr,* 13 Phila. 191 (Pa. Common Pleas),

---

[10] The argument has been made that a holding that a property right in plans was divested by filing would involve a deprivation of property without due process of law. See Katz, *supra,* at 235. In view of the availability of statutory copyright protection this contention seems at least of doubtful validity.

*Wright* v. *Eisle,* 86 App. Div. (N. Y.) 356 (dictum), and
*Kurfiss* v. *Cowherd,* 233 Mo. App. 397, suggest that it does.
In *Kurfiss* v. *Cowherd, supra,* a house was modernized in
accordance with plans and thereafter opened to general pub-
lic inspection. The court reasoned although "it was not
intended that the public could or would take measurements
. . . [of the house] . . . the facts remain that there were
no restrictions to keep any one from so doing" (233 Mo.
App. at 408), and that there had been a general publication
of both the house and the plans. We regard the correct
rule as having been suggested by *Tabor* v. *Hoffman,* 118
N. Y. 30. In that case a repairman made copies of the con-
struction patterns used in the manufacture of a pump. The
issue was "whether there is a secret in the patterns that yet
remains a secret, although the pump has been given to the
world" (p. 35). The court held that "the patterns were a
secret device that was not disclosed by the publication of the
pump . . . . While the defendant could lawfully copy the
pump, because it had been published to the world, he could
not lawfully copy the patterns because they had not been
published, but were still, in every sense, the property of the
plaintiff, who owned not only the material substance, but
also the discovery which they embodied" (p. 37). See
*Tompkins* v. *Halleck,* 133 Mass. 32, 36.

The rule of *Tabor* v. *Hoffman, supra,* can be, in our opin-
ion, soundly extended to the facts in this case. It has been
so extended in *Smith* v. *Paul,* 174 Cal. App. 2d 744, 750:
"[T]he fact that a building is built from the plans and is
open to the gaze of the public . . . may be a publication of
the general design or idea of the building but not a publica-
tion of the exact plans whereby another may without effort
other than that of tracing the work of the architect com-
pletely duplicate the latter's effort."[11] It is contended that

---

[11] "A completed structure is no more a copy than the exhibition of an
uncopyrighted moving picture film, the performance of an uncopyrighted radio
script, or the broadcast of an uncopyrighted radio script, all of which acts have
been held not to dedicate the contents to the public. [Citations omitted.]"
*Smith* v. *Paul, supra,* at 755. See also Nimmer, Copyright Publication, 56 Col.
L. R. 185, 197: "[A] *sine qua non* of publication should be the acquisition by
members of the public of a possessory interest in *tangible* copies of the work
in question."

*Smith* v. *Paul, supra,* cannot serve as a guide in resolving this case because access there to a private home afforded to a limited number of people was quite different from access to the Woburn apartments afforded to the general public. The argument is inapposite: "An architectural plan is a technical writing. It is capable of being copied only by similar technical writings, that is, by other plans, etc. A structure is the result of plans, not a *copy* of them. It follows that building a structure and opening it to public gaze cannot be a publication of its plans." Katz, *supra,* at 236. See *White-Smith Music Publishing Co.* v. *Apollo Co.* 209 U. S. 1, 17–18; Nimmer on Copyright, § 57.3.

Observation or measurement of the exterior and the interior of a completed building can hardly be said to approach an accurate copy of a set of plans. We do not suggest that a common law copyright in the plans is infringed by a drawing made from observation of the interior or exterior of the buildings. Such a doctrine could lead only to a multiplicity of law suits between parties who had erected successively structures of somewhat similar design. On the other hand, the right fully to reproduce plans is a far more substantial aid to a builder unwilling to pay for architectural services than the right to make sketches or drawings of a completed structure.

We thus hold that the construction of the building from the plans constitutes no publication of them at all.

We are of opinion that the availability of Federal copyright protection for published material (17 U. S. C. [1958]) does not require the abandonment of the separate protection afforded to unpublished material by the common law. See *F. W. Dodge Co.* v. *Construction Information Co.* 183 Mass. 62, 66. The Federal cases are consistent with this view. And, as previously indicated, Congress has not enjoined such an abandonment upon the States. 17 U. S. C. § 2 (1958). It would be burdensome to require statutory copyright of architectural plans not intended to be placed in the public domain as a condition of preserving property rights in them.

Edgar H. Wood Associates, Inc. v. Skene.

THE EXTENT OF PERMISSIBLE RELIEF.

The facts stated in the substitute bill, if established at a trial on the merits, set forth a case for equitable relief. In a proper case injunctive relief against future use of the plans might be appropriate. In *Tompkins* v. *Halleck*, 133 Mass. 32, the court held that a bill in equity would lie to enjoin the performance of a play in derogation of a common law copyright. See also *F. W. Dodge Co.* v. *Construction Information Co.* 183 Mass. 62; *Baker* v. *Libbie*, 210 Mass. 599. If it should appear that the Norwood apartments are in process of construction or completed, then, assuming that Wood is entitled to some relief, an injunction should not be granted. Rather, considerations of relative hardship should limit Wood to the recovery of the fair market value of a set of its plans.[12] See *Gallagher* v. *R. E. Cuniff, Inc.* 314 Mass. 7, 9–10; *Manhattan Clothing Co. Inc.* v. *Goldberg*, 322 Mass. 472, 475. Any value assigned should reflect the fact that at the time of the conversion and the copying of the plans they had already been used in the Woburn apartment project and hence were not novel. See *Keegan* v. *O'Donnell*, 310 Mass. 346, 350. No recovery should include any amount normally allocable as a fee for architectural supervision of the construction project. See *Doup* v. *Almand*, 212 Ark. 687. See also *Handforth* v. *Maynard*, 154 Mass. 414, 417–418.

The substitute bill of complaint does state a cause of action in equity, and the plaintiff's motion for leave to file it should have been allowed. The final decree is reversed and the case remanded to the Superior Court for further proceedings on the substitute bill. Wood is to have costs of appeal.

*So ordered.*

---

[12] Analogously, the Federal copyright statute provides in part for the recovery of ". . . .such damages as the copyright proprietor may have suffered due to the infringement, as well as all the profits which the infringer shall have made from such infringement . . . ." 17 U. S. C. § 101 (b) (1958). See *Sammons* v. *Colonial Press, Inc.* 126 F. 2d 341 (1st Cir.).