**NUCOR CORPORATION, Appellant,**

v.

**TENNESSEE FORGING STEEL SERVICE, INC., et al., Appellees.**

No. 72–1209.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 5, 1972.

Decided March 14, 1973.

Rehearing Denied April 17, 1973.

Ernest S. DeLaney, Jr., Charlotte, N. C., for appellant.

Hershel H. Friday, Little Rock, Ark., and John G. Rocovich, Jr., Roanoke, Va., for appellees.

Before MATTHES, Chief Judge, and GIBSON and HEANEY, Circuit Judges.

HEANEY, Circuit Judge.

Nucor Corporation appeals from the denial by the District Court of its re-

quest that the defendants be enjoined from using construction plans allegedly copied from plans drawn by Nucor. Nucor also sought the return of the original plans and other property taken by the defendants White and Munn without permission. The trial court, D.C., 339 F.Supp. 1305, denied the plaintiff's requests for relief, with one exception. It required Munn to return certain property to the plaintiff.[1] We affirm with respect to the latter issue, but otherwise reverse.

Nucor Corporation is a manufacturer of steel joists under the trademark Vulcraft for use in the building industry. It operates a number of joist manufacturing plants in the United States, including one in Grapeland, Texas. The construction plans for the Grapeland plant were drawn by Nucor employees at an estimated cost of $20,000. When the Grapeland plans were completed in the latter part of 1967, between fifteen and thirty sets of the plans were sent to White and he, in turn, sent them to contractors and subcontractors to obtain construction bids. White was employed by Nucor as Manager of Construction and supervised the construction of the plant. The plant was completed in 1968.

In the fall of 1971, while White was still an employee of Nucor, he was asked by Munn, then President of Tennessee Forging, to have plans drawn for construction of a steel joist plant in Hope, Arkansas; the plant to be operated by Tennessee Forging.[2] White agreed to have the plans drawn, and Munn agreed to pay him for his services.

On November 22, 1971, White visited the Grapeland plant. He requested and was given a complete set of the Grapeland construction plans. He did not state why he wanted the plans, but was accompanied by Nucor's President, with whom he discussed the planned construction of a Nucor plant in Indiana.

In early December, White approached Gene K. King at the latter's engineering firm, presented him with Nucor's Grapeland plant plans and requested that King design a joist plant, using the Nucor plans as a guide. He further instructed him to make certain modifications to the plans.[3] King completed the plans and delivered them to White on January 12, 1972. A few days prior to the delivery, King learned from White that the plans were being drawn for Tennessee Forging. On January 14, 1972, White resigned from Nucor and opened his own consulting firm. Shortly thereafter, White and Munn firmed up their earlier understanding. They agreed that White would receive $2,700 for costs incurred by him in having the plans prepared, and that he would be retained as a consultant to Tennessee Forging at an annual fee of $25,000. Construction commenced in mid-January, 1972.

Nucor initiated this action against the defendants on February 21, 1972. It al-

1. Mr. Munn was employed as Vice President of Nucor and General Manager of its joist plant in Florence, South Carolina, between September, 1964, and February, 1971. Munn allegedly took Nucor's steel joist designs and production time study and cost data when he left that company. The District Court ordered Munn to return any property of Nucor that was in his possession. There is no cross appeal as to the propriety of that order. Munn thus entered into this appeal only with respect to the part he played in arranging for Nucor's plans to be made available to Tennessee Forging Steel Service, Inc.

2. After Munn left Nucor in February of 1971, he was employed by Congaree Iron and Steel Company until September 21, 1971. He joined Tennessee Forging Steel Service, Inc., on October 1, 1971. Munn's testimony reveals that even while he was employed by Congaree, he had discussions with White and two South Carolina businessmen concerning the possible construction of a steel joist plant somewhere in Arkansas. The Hope, Arkansas, location was apparently decided on in October, and construction was planned to begin in mid-January, 1972.

3. These modifications included the length and width of the plant, the dimensions of the bay areas, column sizes, truss design, and crane rail design.

leged that its common law copyright in the Grapeland construction plans had been infringed, and that White and Munn had breached their obligation as employees of Nucor not to disclose their employer's trade secrets or other confidential information to competitors. Nucor requested injunctive and such other relief as might be appropriate.

The trial court held that even if Nucor had a common law copyright in the Grapeland plans, it lost this copyright by general publication. It also held there had been no infringement of Nucor's copyright because there were substantial differences between the Grapeland and Hope plans, and that there was no breach of a trust by White. It refused to enjoin construction of the building.

On this appeal, Nucor contends that it had a common law copyright in its Grapeland plans, that it did not abandon this copyright or make a general publication of it, and that the defendant, White, infringed on this copyright. It also argues that White obtained the Grapeland construction plans because of his confidential relationship with Nucor, that he breached the obligation of trust he owed to Nucor, and that as a result, the defendant, Tennessee Forging, was unjustly enriched. Because the defendants have now completed the building, Nucor asks that we remand the matter to the District Court with instructions to that court to enjoin the defendants from further use of the plans, to require them to return the Grapeland plans to Nucor, and with further instructions to permit Nucor to amend its complaint to request damages from the defendants for the improper use of the plans and to proceed to trial on the issue of damages.

The matter was tried below on the theory that Arkansas law controls. We accept that approach, but note that there is little Arkansas law directly on point. We are, thus, faced with the difficult task of attempting to determine how the Arkansas Supreme Court would decide the matter if it were presented to that court. In this task, we give special weight to the determination of local law by the trial court but, nonetheless, conclude that it erred.[4] We do so out of a firm conviction that the Arkansas Supreme Court, if faced with this matter, would conclude that the defendants' conduct did not meet the high standards required of corporate officers and managers in Arkansas,[5] and that the plaintiff was entitled to relief from the defendants' inequitable conduct.[6] We also believe that the Arkansas Supreme Court would be inclined to follow the view of the law expressed in the cases we cite.

The first question is whether Nucor had a common law copyright in the Grapeland plans. The plans consisted of approximately thirty sheets of detailed blueprints and shop drawings, which Nucor had designed in its engineering department in 1967 and which were followed in constructing the Grapeland plant. The trial court held in its opinion that:

> "The 'roll of plans' for the Grapeland plant was the property of NUCOR and NUCOR had a common law right of copyright in it. * * * "

---

4. In Larry Luke, et al. v. American Family Mutual Insurance Company, 476 F.2d 1015 (8th Cir. 1972), petition for rehearing en banc granted, December 27, 1972, Judge Lay stated:
   "Although this court gives special weight to the determination of local law by a federal district judge, a court of appeals cannot be irrevocably bound by a district judge's choice of one of two or more alternative rules to follow in a diversity case. To hold otherwise would be to abdicate our appel-

late responsibility." (Footnote omitted.)

5. See, e. g., Raines v. Toney, 228 Ark. 1170, 313 S.W.2d 802 (1958).

6. The Arkansas Supreme Court has indicated on a number of occasions that in equity matters, a court must be a court of conscience and seek to afford relief which will do substantial justice to all. See, e. g., Whitaker & Co. v. Sewer Improvement District No. 1, 229 Ark. 697, 318 S.W.2d 831 (1958).

This holding was correct. Architectural plans such as Nucor's are protected by common law copyright. Nimmer, The Law of Copyright, § 26 (1967); Katz, Copyright Protection of Architectural Plans, Drawings, and Designs, 19 Law & Contemp.Prob. 224, 229 (1954). We reject the defendants' argument that Nucor's plans were so unoriginal that they were not entitled to protection. While the concept of a T-shaped building is not entitled to copyright protection, detailed plans and drawings of a specific building are.

■ The trial court, however, found that Nucor lost its common law copyright protection through general publication. It stated that the following activities, when considered in their totality, constituted such publication:

(1) Sending approximately thirty sets of plans to contractors and subcontractors because—

(a) the plans contained no notice that they were confidential or limited as to circulation,

(b) no deposits were required from the contractors or subcontractors, and

(c) there was no requisite that they be returned.

(2) Permitting any and all interested persons to see, visit and inspect the building in all stages of construction and the entire plant when in operation after construction was completed.

(3) Distributing ten thousand catalogs and forty thousand annual reports containing aerial photographs of the exterior of the Grapeland plant.

We reject the trial court's holding.[7]

■ First, a distribution of plans to potential contractors and subcontractors for bidding purposes does not constitute general publication. See, Read v. Turner, 239 Cal.App.2d 504, 48 Cal.Rptr. 919, 40 A.L.R.3d 237 (1966); Ashworth v. Glover, 20 Utah 2d 85, 433 P.2d 315 (1967). This is true even though the plans are not marked confidential, are not required to be returned, and can be obtained without paying a deposit. *Cf.,* Pressed Steel Car Co. v. Standard Steel Car Co., 210 Pa. 464, 60 A. 4 (1904).

■ Second, an owner does not lose his common law copyright by permitting interested persons to view and inspect a building during and after construction. The trial court bolstered its contrary conclusion with the observation that:

" \* \* \* While competitors and members of the general public did not inspect specific building plans in connection with their touring of and observing the plants, the evidence reflects that there is nothing on the plans (and in particular nothing on the plaintiff's plans for its Grapeland plant) which would not be readily apparent to any competitor or knowledgeable person touring or observing plaintiff's plants."

We do not believe that displaying a building during or after construction, or publishing photographs of it, can be said

---

7. The prevailing law respecting the effect of publication upon common law copyrights was stated in Edgar H. Wood Associates, Inc. v. Skene, 347 Mass. 351, 197 N.E.2d 886, 892 (1964).:

"\* \* \* Only a general publication terminates a common law copyright. It is 'such a disclosure, communication, circulation, exhibition, or distribution of the subject of copyright, tendered or given to one or more members of the general public, as implies an abandonment of the right of copyright or its dedication to the public.' \* \* \* A limited publication is 'one which communicates a knowledge of its contents under conditions expressly or impliedly precluding its dedication to the public.' \* \* \* Further, to be general a publication must be such ' " ' . . . as to justify the belief that it took place with the intention of rendering . . . (the) work common property.' " ' \* \* \* While the test is properly one of intention, it is clear that the unexpressed, subjective intention of the creator cannot be allowed to govern \* \* \*; rather the implications of his outward actions to the reasonable outsider are controlling." (Citations omitted.)

to be the equivalent of publishing the building plans. While the observation of the building in person or through photographs may provide the basis for designing a similar building through a trained observer's initiative, it cannot provide the excuse for copying from plans without permission.[8] See, De Silva Construction Corp. v. Herrald, 213 F.Supp. 184 (M.D.Fla.1962); Edgar H. Wood Associates, Inc. v. Skene, 347 Mass. 351, 197 N.E.2d 886 (1964); Smith v. Paul, 174 Cal.App.2d 744, 345 P.2d 546, 77 A.L.R.2d 1036 (1959). *Cf.,* Tabor v. Hoffman, 118 N.Y. 30, 23 N.E. 12 (1889).

■ Third, the distribution of catalogs and annual reports—which included photographs of the exterior of the Grapeland plant—does not constitute a general publication of its plans. We believe that Shanahan v. Macco Construction Co., 224 Cal.App.2d 327, 36 Cal. Rptr. 584 (1964), relied on by the defendants, is inapposite. There, the plaintiff had distributed several thousand brochures to the public, in addition to newspaper and magazine advertisements, all of which contained detailed representations or reproductions of that plaintiff's plans. Nucor merely included an exterior photograph of the plant in the cited publications. This did not amount to a general publication of its detailed plans.

Finally, the activities—when viewed in their totality—do not constitute a general publication.

■ The trial court's alternative holding that even if there was no general publication, Nucor's common law

copyright was not infringed, is also in error. The court found that while the Hope and Grapeland plans were similar in some respects, they were substantially different in many other ways. It apparently believed that where there are substantial differences, infringement has not occurred. That view is in error.

"In order to constitute an infringement * * * it is not necessary that the whole or even a large portion of the book [plans] shall have been copied. It is sufficient if a material and substantial part shall have been copied, even though it be but a small part of the whole. * * *" (Citations omitted.)

Henry Holt & Co. v. Liggett & Myers Tobacco Co., 23 F.Supp. 302, 303 (E.D. Pa.1938). See also, Hedeman Products Corp. v. Tap-Rite Products Corp., 228 F.Supp. 630 (D.N.J.1964).

We have carefully reviewed the record and find that the court's conclusion that "the similarities are not of such nature as to be exclusive or protected to Nucor" is erroneous. Uncontroverted evidence shows that material sections of the Hope plans were exact reproductions of sections of the Grapeland plans and that there are other similarities in design and details. While the defendants could have designed and constructed a joist plant without the aid of Nucor's plan, the fact remains that the defendants' designer, King, used the Grapeland plans in producing the Hope plans, and the many similarities between the two sets of plans were the product of King's copying and not the. product of independent design. The essence of the infringement is that the defendants "ap-

---

8. We are convinced that the better view of the law and that which Arkansas would follow was correctly stated by Katz, Copyright Protection of Architectural Plans, Drawings and Designs, 19 Law & Contempt.Prob. 224, 236 (1954):

"* * * An architectural plan is a technical writing. It is capable of being copied only by similar technical writings, that is, by other plans, etc. A structure is the result of plans not a *copy* of them. It follows that building a structure and opening it to the public gaze cannot be a publication of its plans." (Emphasis included and footnotes omitted.)

See also, Nimmer, Copyright Publication, 56 Colum.L.Rev. 185, 197 (1956), where the author suggests:

"* * * . [A] *sine qua non* of publication should be the acquisition by members of the public of a possessory interest in *tangible* copies of the work in question." (Emphasis included.)

**392**

propriat[ed] * * * the fruits of another's labor and skill in order to publish [construct] a rival work [plant] without expending the time and effort necessary to achieve the same result independently * * *." Hedeman Products Corp. v. Tap-Rite Products Corp., *supra* at 634.

■ The second question is whether White breached an implied obligation not to disclose Nucor's plans to competitors. The trial court held no breach occurred because the plans were not trade secrets. However, we believe that the Arkansas Supreme Court suggested in Witmer v. Arkansas Dailies, 202 Ark. 470, 151 S.W.2d 971 (1941), that employees have a high duty not to disclose confidential information received by them as employees to competitors regardless of the fact that the information disclosed might not technically be considered a trade secret. See also, Raines v. Toney, 228 Ark. 1170, 313 S.W.2d 802 (1958). This view is consistent with that expressed in the Restatement (Second) of Agency, §§ 395 and 396 (1958).[9]

See also, Restatement of Torts, § 759 (1939). We think it is the correct view.

■ The record strongly supports the conclusion that the Grapeland plans were confidential and that White breached the implied duty of an employee not to disclose confidential information to a competitor.[10] It is replete with uncontradicted testimony by Nucor's officials that the Grapeland plans were considered by the firm to be confidential information. While this testimony may be self-serving, the trial court found that visitors and competitors were not allowed to view the Grapeland plans.[11] Indeed, it is clear that the only outsiders who were allowed to see the plans were those contractors and subcontractors who received sets of the plans for the sole purpose of submitting bids on the construction of the Grapeland plant. That disclosure would not destroy the confidential character of the plans as they were submitted to the contractors for the limited purpose of bidding. See, Pressed Steel Car Co. v. Standard Steel Car Co., *supra*.

9. "§ 395. *Using or Disclosing Confidential Information*
   "Unless otherwise agreed, an agent is subject to a duty to the principal not to use or to communicate information confidentially given him by the principal or acquired by him during the course of or on account of his agency or in violation of his duties as agent, in competition with or to the injury of the principal, on his own account or on behalf of another, although such information does not relate to the transaction in which he is then employed, unless the information is a matter of general knowledge."
   "§ 396. *Using Confidential Information after Termination of Agency*
   "Unless otherwise agreed, after the termination of the agency, the agent:
   *   *   *   *   *
   "(b) has a duty to the principal not to use or to disclose to third persons, on his own account or on account of others, in competition with the principal or to his injury, trade secrets, written lists of names, or other similar confidential matters given to him only for the principal's use or acquired by the agent in violation of duty.
   *   *   *"

10. This Court, in a prior diversity case interpreting Arkansas law, quoted with approval the following statement from an annotation in 165 A.L.R. 1453, 1454:
    " 'The law is well settled that one of the implied terms of a contract of employment is that the employee will hold sacred any trade secrets or other confidential information which he acquires in the course of his employment, and that therefore an employee who has left his employment is under an implied obligation not to use trade secrets or other confidential information which he has acquired in the course of his employment, for his own benefit or that of a rival, and to the detriment of his former employer.' " Tlapek v. Chevon Oil Company, 407 F.2d 1129, 1133 (8th Cir. 1969).

11. In addition to that evidence, this conclusion is supported by Plaintiff's Exhibit 12, a letter of June 17, 1966, from Nucor's attorney to some of its former employees, which states that Nucor even at that point in time considered its blueprints and similar property to be proprietary information which could not be used by those former employees without written permission of the company.

Furthermore, it is clear from the record that White had received copies of the plans solely by virtue of his position as a Nucor employee so that he might use them for the benefit of Nucor. He was never given permission to use these plans for the benefit of anyone but Nucor, and the record strongly suggests that such permission would not have been granted if he had sought it.

The seriousness of White's breach of trust is not lessened by the fact that King may have had the skill to prepare plans for the Hope plant without utilizing the Grapeland plans. As is cogently stated in Tabor v. Hoffman, *supra* 118 N.Y. at 37, 23 N.E. at 13:

"* * * Even if resort to the patterns [plans] of the plaintiff was more of a convenience than a necessity, still, if there was a secret, it belonged to him, and the defendant had no right to obtain it by unfair means or to use it after it was thus obtained."

See also, Franke v. Wiltschek, 209 F.2d 493 (2nd Cir. 1953); Smith v. Dravo Corp., 203 F.2d 369 (7th Cir. 1953); Kalinowski, Key Employees and Trade Secrets, 47 Va.L.Rev. 583 (1961).

We hold both that Nucor's copyright was infringed and that White breached an implied duty not to disclose Nucor's confidential information to a competitor. At the time Nucor served its complaint, only minimum construction had begun, and the proper disposition would have been to grant Nucor's request for a permanent injunction. Dismissal of Nucor's complaint was error. Now, the Hope plant is substantially completed, and to enjoin its construction would be futile. Yet as it is clear that Nucor has been wronged and that the defendants, White and Tennessee Forging, have benefited from this wrong, it is appropriate that Nucor be afforded the following relief:[12]

(1) That the defendants be permanently enjoined from making further use of Nucor's Grapeland plans, and that they be required to return the Grapeland plans to Nucor.

(2) That Nucor be permitted to amend its complaint to claim damages from the defendants for the fair value of the Grapeland plans, and that it be permitted to prove its damage in an appropriate proceeding.

Affirmed in part, reversed in part, and remanded to the District Court for disposition consistent with this opinion.

---

12. The City of Hope, Arkansas, was joined in this suit solely to insure that an injunction could be issued against the proper party. The plaintiff concedes that the City has not engaged in any wrongdoing. We, therefore, affirm the trial court's dismissal of the complaint as to it.

On the other hand, there is evidence in the record indicating that Munn was a knowing and active participant in the scheme to obtain Nucor's plans for Tennessee Forging. Under such circumstances, it is inappropriate to sustain the trial court's dismissal of the action with respect to Munn. His liability will have to be determined on remand.